**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SOPREMA, INC.,** | ) | **CASE NO.1:09CV558** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **BEACHSIDE ROOFING LLC ET AL.,** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendant.** | ) | |

<u>**CHRISTOPHER A. BOYKO, J:**</u>

　　This matter is before the Court on Defendants' Beachside Roofing L.L.C. Motion to

Dismiss for Lack of Personal Jurisdiction or, in the Alternative, For Change of Venue (ECF# 5),

A-1 Master Roofing, Inc. Motion to Dismiss for Lack of Personal Jurisdiction or, in the

Alternative, for Change of Venue (ECF # 13) and Bodell Construction Co.'s Motion to Dismiss

for Lack of Personal Jurisdiction (ECF # 8).  For the following reasons, the Court grants, in part,

Defendants' Motions.

　　Plaintiff Soprema, Inc.'s ("Soprema") First Amended Complaint alleges breach of

contract, unjust enrichment, and conversion claims arising from a roofing project in Hawaii.

Plaintiff, an Ohio corporation, supplies roofing materials for construction projects.  Defendant

1

Beachside Roofing, L.L.C. ("Beachside") is a Hawaii roofing company.  A-1 Master Roofing, Inc. ("A-1") is a Hawaii roofing company.  Defendant Bodell Construction Company ("Bodell") is incorporated in Utah.  Both Beachside and A-1 are authorized Soprema roofing contractors per written agreements with Soprema.

Plaintiff's First Amended Complaint, removed to this Court from Medina County Court of Common Pleas on March 16, 2009, alleges in December 2006 A-1 began installing a Soprema roofing product on a project in Hawaii.  Soprema alleges this roofing work was done improperly and A-1 attempted to repair the work.  In March 2007, Beachside contracted with Bodell to repair the roofing project.  As a result of an agreed upon mediation in Hawaii, Bodell, Beachside and Soprema reached an agreement on how to repair the roofing work first installed, in part, by A-1.  This involved the purchase of additional product from Soprema and allowed Soprema to supervise and conduct testing of the repair work.  Soprema contends Defendants Bodell and Beachside have failed to reimburse Soprema in the amount of $519, 709.08 for product purchased by Defendants including shipping; and $72,797.24 for testing, supervision and inspecting services.  Soprema contends A-1 owes Soprema $40, 487.50 for testing, supervision and inspection costs and $314,310.00 for defective workmanship.

Defendants move the Court to Dismiss for Lack of Personal Jurisdiction or, in the Alternative to Transfer Venue to Hawaii.  Defendants allege all the relevant documents, witnesses and work sites are in Hawaii and Defendants do not engage in any business in Ohio.

Plaintiff contends the authorized contractor agreements with A-1 and Beachside contain forum selection clauses naming Medina County, Ohio and United States District Court for the Northern District of Ohio as the agreed upon courts for resolution of disputes arising from the

2

agreements.  Furthermore, Plaintiff alleges Defendant Bodell, who did not enter into an

agreement with Soprema containing a forum selection clause, entered into a credit agreement

with Plaintiff in Ohio and engaged in the transaction of business in Ohio, giving this Court

personal jurisdiction over Bodell.

Beachside alleges its liability, if any, stems from an agreement entered into by all four

parties to this litigation wherein they agreed to mediate the repairs needed on the Hawaii project.

Therefore, Beachside claims the 2005 authorized contractor agreement is not applicable to the

claims before this Court.

## STANDARD OF REVIEW

In a case before a federal court upon diversity jurisdiction, the Court looks to the law of

the forum state to determine whether personal jurisdiction exists.  *Estate of Thomson ex rel.*

*Estate of Rakestraw v. Toyota,* 545 F.3d 357, 361 (6th Cir. 2008).  The Court applies a two-step

inquiry when examining if it has personal jurisdiction over the parties. "First, we must determine

whether Ohio law authorizes jurisdiction.  If it does, we must determine whether that

authorization comports with the Due Process Clause of the Fourteenth Amendment." *Id.*

Where personal jurisdiction is challenged in a Rule 12(b)(2) motion, the plaintiff has the burden

of establishing that jurisdiction exists.  *Weller v. Cromwell Oil Co.*, 504 F.2d 927 (6th Cir.

1974).  However, the nature of plaintiff's burden changes depending on the manner in which the

district court approaches the motion.   *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168

(6th Cir. 1988).  Because this Court is deciding Defendants' motions solely on the written

materials, plaintiff is only required to make a prima facie showing that personal jurisdiction

exists.  *Id.* at 1168-69.  In addition, since the Court finds no need for an evidentiary hearing, "the

3

burden of the plaintiff is relatively slight" and the Court must construe the pleadings and

affidavits in the light most favorable to plaintiff.  *Id.* at 1169.

**Bodell Construction Company**

      In its Motion, Bodell contends it is a Utah corporation without employees, offices or

facilities in Ohio.  According to Bodell, on December 1, 2005, it entered into an agreement with

Queens' Market LLC to do construction work.  On February 22, 2006, Bodell subcontracted

with A-1 to supply and install roofing materials provided by Soprema.  Due to problems with A-

1's performance and schedule, Bodell contracted with Beachside to supplement and complete A-

1's work.  A-1 completed the roofing on four buildings in the Queens' MarketPlace project while

Beachside completed the roofing on six buildings.  A-1 and Beachside were approved installers

of Soprema's roofing product and their agreements with Soprema authorized Soprema to inspect

and approve the installation work before Soprema would issue its product warranty.  Pursuant to

its installer agreements, Soprema sent inspectors to Hawaii.  On April 16, 2007, Bodell contends

Soprema approved the work A-1 did on buildings A, B, C and D.  On December 5, 2007, there

were catastrophic roof leaks at ten roofs with over 125 individual leaks.  The project architect

inspected the facilities and determined the roofs were not water tight as required under the

contract, therefore, Queens' Market LLC ("Queen's Market")withheld two million dollars owed

Bodell.  Soprema revoked its warranty due to the alleged improper installation.  Without the

Soprema warranty, Queens' Market rejected a repair plan but insisted on full replacement of the

roofs.  On July 10, 2008, representatives of Soprema, Queens' Market and Defendants met in

Honolulu to attempt to resolve the problems.  Queens' Market informed the participants it

required corrections by Thanksgiving of 2008 and required a fifteen-year warranty by Soprema.

4

Thereafter, the repairs were made on schedule but Queens' Market will not release the two million dollars owed Bodell until Soprema warranties the roofs.

Bodell argues the Court lacks personal jurisdiction over it because Bodell is a Utah corporation that does not do business in Ohio.  Bodell asks, in the alternative, that the Court transfer venue pursuant to 28 U.S.C. §1404(a), to the District Court of Hawaii.  However, the Sixth Circuit has held that, "a transfer under section 1404(a) may not be granted when the district court does not have personal jurisdiction over the defendants." *Pittock v. Otis Elevator Company*, 8 F.3d. 325, 329 (6th Cir. 1993).  Therefore, the Court must determine whether it has personal jurisdiction over Defendants before it may consider transfer under §1404(a).

"The exercise of personal jurisdiction is valid only if it meets both the state long-arm statute and constitutional due process requirements. *(Citations omitted)*. Although the Ohio Supreme Court has ruled that the Ohio long-arm statute does not extend to the constitutional limits of the Due Process Clause, our central inquiry is whether minimum contacts are satisfied so as not to offend 'traditional notions of fair play and substantial justice.'" *Calphalon Corp. v. Rowlette* 228 F.3d 718, 721 (6th Cir. 2000), citing *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir.1998).  The Court must first determine if Defendants' actions satisfy Ohio's long arm statute and Ohio Rule of Civ. P. 4.3. "The Ohio Supreme Court found the [statute and the rule] to be coextensive, holding 'that the statute and civil rule are consistent and in fact complement each other.' "*U.S. Sprint Communications Co. Ltd. Partnership v. Mr. K's Foods, Inc.* (1994), 68 Ohio St.3d 181, 184 at fn. 2 quoting *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.* (1990), 53 Ohio St.3d 73, 75.

The Ohio Long-Arm statute, O.R.C. § 2307.382(A), states that personal jurisdiction arises

from:

> (1) Transacting any business in this state;
> (2) Contracting to supply services or goods in this state;
> (3) Causing tortious injury ... in this state;
> (4) Causing tortious injury in this state by an act ... outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state ...;
> (5) Causing injury in this state to any person by breach of warranty ...;
> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of inquiring persons ...;
> (7) Causing tortious injury to any person by criminal act ...;
> (8) Having an interest in, using, or possessing real property in this state;
> (9) Contracting to insure any person, property, or risk located within this state ....

> "The phrase 'transacting any business' is broad and encompasses more than 'contract.'"

*Clark v. Connor* (1998), 82 Ohio St.3d 309, 312. "The term 'transact' as utilized in the phrase 'transacting any business' encompasses to 'carry on business' and to 'have dealings.' *Goldstein v. Christiansen* (1994), 70 Ohio St.3d 232, 236. "With no better guideline than the bare wording of the statute to establish whether a nonresident is transacting business in Ohio, the court must, therefore, rely on a case-by-case determination." *KB Circuits Inc. v. BECS Technology, Inc.,* No. 00AP 621, 2001 WL 40584 *2(Ohio App. 10 Dist., Jan. 18, 2001), quoting *McKinley Machinery, Inc. v. Acme Corrugated Box Co., Inc.* No. 98CA007160, 2000 WL 961300, *2 (Ohio App. 9 Dist., July 12, 2000),.

Given the broad definition of "transacting business," the Court finds Bodell transacted business in the State of Ohio by entering into a credit agreement with Soprema, making multiple payments to Soprema in Ohio to purchase product and sending multiple purchase orders to Ohio over the course of several months. Because the Court is required to construe all pleadings and evidence in a light most favorable to Plaintiff and because the burden on Plaintiff is relatively slight to show personal jurisdiction, the Court finds Soprema has demonstrated sufficient

contacts to satisfy Ohio law that Bodell transacted business in the State of Ohio.  Bodell's

affidavits attest to numerous communications between Soprema and Bodell in the context of

correcting the faulty installation of the roofs.  This is not a case where Soprema unilaterally

acted outside the State of Ohio in furtherance of the project; rather, the parties engaged in

numerous discussions and negotiations between Ohio and Hawaii, had an ongoing relationship

over the course of several months involving multiple transactions with Soprema shipping

product from Ohio to Hawaii and Bodell sending payment to Ohio. Furthermore, Soprema and

Bodell entered into a credit agreement.

Finally, the causes of action in Plaintiff's First Amended Complaint arise from the

ongoing business transactions in that Plaintiff contends it is owed payment for product ordered

by Defendant Bodell and for allegedly agreed upon inspection, testing and supervision expenses.

Having determined Plaintiff has met its burden of demonstrating minimum contacts

under Ohio law, the Court must next examine whether its exercise of personal jurisdiction over

Bodell comports with due process.  "As always in this context, the crucial federal constitutional

inquiry is whether, given the facts of the case, the nonresident defendant has sufficient contacts

with the forum state that the district court's exercise of jurisdiction would comport with

'traditional notions of fair play and substantial justice.'" *Compuserve*, *Inc. v. Patterson,* 89 F.3d

1257, 1263 (6th Cir. 1996) quoting *International Shoe Co. v. Washington,* 326 U.S. 310,

316,(1945).  "This court has repeatedly employed three criteria to make this determination:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state

or causing a consequence in the forum state. Second, the cause of action must arise from the

defendant's activities there. Finally, the acts of the defendant or consequences caused by the

defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable." *Compuserve*, at 1263 citing *Reynolds, v. International Amateur Athletic Federation,* 23 F.3d 1110, 1116 (6th Cir. 1994).

When examining whether a Defendant has purposefully availed themselves of the privilege of acting in the forum state the United States Supreme Court has held that when a party reaches out of state to create continuing relationships and obligations between themselves and a citizen of another state due process is not offended.  *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473 (1985).  The Court went on to say, "Moreover, where individuals 'purposefully derive benefit' from their interstate activities, (citation omitted) it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." *Id* at 473-74.

Here, Bodell's own affidavits evidence continuing contacts in the form of purchase orders and payments and contacts between Bodell and Soprema regarding the roofing project in Hawaii.  Bodell benefitted or stands to benefit from the purchase of Soprema's product once Queens' Market obtains its warranty from Soprema.  Therefore, Soprema has shown Bodell purposefully availed itself of the privileges of transacting business in Ohio.

Next, the Court must examine whether the operative facts of the cause of action arise from the contacts with the forum state.  Here, Soprema alleges Bodell breached an agreement to pay for product shipped from Soprema's Ohio facility and/or unlawfully converted it and/or was unjustly enriched by its receipt of Soprema's product.  Therefore, the operative facts directly relate to Bodell's contacts with an Ohio company and its purchases of an Ohio company's

8

product.  The affidavit of Defendant's Secretary, Treasurer and Chief Financial Officer, Merrill L Weight, attests that all the 2007 invoices for Soprema product were paid for and Bodell has not received any invoices for materials or issued purchase orders for the materials for which Plaintiff now seeks recovery.  However, the Court finds that Plaintiff's First Amended Complaint generally alleges Bodell owes for product and services rendered by Soprema and  Bodell's affidavit is silent as to payment for those *services*.  Furthermore, Exhibit F to Plaintiff's First Amended Complaint evidences amounts owed for 2008.  Since the amounts owed, if any, go to the substance of the dispute, those facts are reserved for future inquiry and discovery.

Finally, the Court must determine whether the acts of Bodell or consequences of Bodell's actions had a substantial impact on the forum state to make its exercise of jurisdiction reasonable.  The Sixth Circuit has found that where the first two criteria are met, there is a presumption the exercise of personal jurisdiction is reasonable.  *Tharo Systems, Inc., v. CAB Produkttechnik GMBH & Co. KG,* 196 Fed. Appx. 366 *3 (6th Cir. 2006).  In *Tharo,* the Court stated:

> Though we "consider several factors ..., including the burden on the defendant, the interest of the forum state, [and] the plaintiff's interest in obtaining relief," in assessing the reasonableness of asserting personal jurisdiction over CAB, where, as here, the first two prongs of the due process inquiry have been satisfied, we will "presume the specific assertion of personal jurisdiction was proper." ("[O]nce the first two questions have been answered affirmatively, resolution of the third involves merely ferreting out the unusual cases where that interest cannot be found."). (citations omitted).

Based on the credit agreement, the compromise on remediation, multiple purchase orders and payments sent to Ohio and negotiations, the Court finds it reasonable to exercise personal jurisdiction over Defendant Bodell.

9

**A-1 and Beachside Personal Jurisdiction**

Soprema contends Defendants A-1 and Beachside have waived any challenges to this Court's exercise of personal jurisdiction over them pursuant to the forum selection clauses contained in the Soprema Authorized Roofing Contractor agreements. The forum selection clauses name Medina County Court of Common Pleas or the Northern District of Ohio as the proper forum for all disputes arising from those agreements.  In Section 13.10 of the Soprema Authorized Roofing  Contractor Agreements signed February 16, 2005, by Beachside and July 12, 2006, by A-1,  it states:

> **Jurisdiction; Venue:** Any suit, action or other proceeding which arises out of or is based upon the subject matter of this Agreement shall be brought in one of the state courts of Ohio with jurisdiction over Medina County or the United States District Court for the Northern District of Ohio. Contractor hereby irrevocably admits to the jurisdiction of these courts and hereby waives, and agrees not to assert, by way of motion, as a defense, or otherwise, in any such suit, action, or proceeding, any claim that it is not subject personally to the jurisdiction of such courts, that its property is exempt or immune from attachment or execution, that the suit, action or proceeding is brought in an inconvenient form, that the venue of the suit, action or proceeding is improper, or that this Agreement or the subject matter hereof, may not be enforced in or by such court. Contractor hereby consents to service of process by registered or certified mail at the address to which notices are to be given.

"Federal courts hold that forum selection clauses that have been freely bargained for are *prima facie* valid and enforceable." *Diebold, Inc. v. Firstcard Financial Services, Inc.* 104 F.Supp.2d 758, 763 (N.D.Ohio,2000) *citing Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 593-594, (1991) *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 12-13, (1972) ("[A] freely negotiated private international agreement, unaffected by fraud, undue influence, or overweening bargaining power ... should be given full effect.").  "The Ohio Supreme Court has held that a forum selection clause contained in a commercial transaction is valid and enforceable absent

evidence of fraud or overreaching." *Diebold* at 763 citing *Kennecorp Mtge. Brokers, Inc. v. Country Club Convalescent Hospital, Inc.,* 66 Ohio St.3d 173 (1993). "A party challenging a forum selection clause must clearly show that enforcement would be unreasonable or unjust."*Diebold* at 763.

"[T]he requirement that a court have personal jurisdiction over a party is a waivable right and there are a variety of legal arrangements whereby litigants may consent to the personal jurisdiction of a particular court system." *Kennecorp Mortgage Brokers, Inc. v. Country Club Convalescent Hospital, Inc.,* 66 Ohio St.3d 173, 175 (Ohio 1993). It is well settled that contracting parties may use a forum selection clause to submit to the jurisdiction of a particular court. *M/S Bremen at 1.*

"A forum selection clause contained in an agreement in connection with an arms length commercial transaction between two business entities is valid and enforceable." *Preferred Capital, Inc. v. Associates in Urology*, 453 F.3d 718, 721 (6th Cir. 2006), citing *Kennecorp,* at 175. "The Supreme Court has stated that in light of present-day commercial realities, a forum selection clause in a commercial contract should control, absent a strong showing that it should be set aside." *Preferred* at 721, citing *M/S Bremen,* 407 U.S. at 15, 92 S.Ct. 1907.

"In determining the validity of a particular forum selection clause, we thus consider the following factors: (1) the commercial nature of the contract; (2) the absence of fraud or overreaching; and (3) whether enforcement of the forum selection clause would otherwise be unreasonable or unjust." *Preferred* at 721, citing *Info. Leasing Co. v. Jaskot,* 151 Ohio App.3d 546, (Ohio App. 1st Dist. 2003).

The parties do not dispute that the Authorized Roofing Agreements are commercial.  Nor

do the Defendants allege fraud was involved in forming the agreements.  In fact, neither A-1 nor

Beachside challenge the validity of the forum selection clause.  Instead, they contend its

existence does not satisfy the broader personal jurisdiction analysis of minimum contacts and

due process.  However, the Supreme Court, as cited above, has clearly held that personal

jurisdiction may be waived.  Once the parties agreed to the forum selection clause they

consented to the personal jurisdiction of this Court absent some showing that the clause is not

valid.  Defendants have offered no evidence to rebut the presumption of the validity of the clause

nor have they argued against its validity.  Therefore, the Court finds A-1 and Beachside waived

any challenge to the personal jurisdiction of this Court.

## Venue and 1404(a)

Although the forum selection clause may be dispositive on the question of personal

jurisdiction, it is not dispositive on the question of most appropriate venue.  Pursuant to 28

U.S.C. § 1404(a), the Court has broad discretionary powers to transfer civil actions.[1]  "For the

convenience of parties and witnesses, in the interest of justice, a district court may transfer any

civil action to any other district or division where it may have been brought."

The contracts between Soprema and A-1 and Soprema and Beachside contain forum

selection clauses naming Medina Court of Common Pleas and the Northern District of Ohio as

the appropriate forums.  The U.S. Supreme Court has held, "1404(a) accords broad discretion to

a district court, and plaintiff's choice of forum is only one relevant factor for its consideration."

*Stewart Organization, Inc. et al., v. Ricoh Corp.,* 487 U.S. 22, 31 (1988).  Also, in *Stewart,* the

_____

[1]    Beachside's Motion to Dismiss alleges improper venue under Section 1404, but 1404 is not the
proper vehicle for transfer for improper venue.  28 U.S.C. 1406 is the appropriate statute for
transfering a case based on improper venue.

Supreme Court held, "the forum-selection clause, which represents the parties' agreement as to the most proper forum, should receive neither dispositive consideration (parentheticals omitted) nor no consideration (parentheticals omitted) but rather the consideration for which Congress provided in §1404(a)." *Id.*

"The district court must weigh a number of case-specific factors such as the convenience of parties and witnesses, 'public-interest factors of systemic integrity,' and private concerns falling under the heading 'the interest of justice.'" *Kerobo v. Southwestern Clean Fuels, Corp.* 285 F.3d 531, 537 (6th Cir. 2002) quoting *M/S Bremen* at 1907.

"Although there is no definitive list of factors that must be considered in determining whether change of venue is warranted for convenience of parties and witnesses, a district court may consider a number of case-specific factors including, but not limited to: (1) the nature of the suit; (2) the place of events involved; (3) relative ease of access to sources of proof; (4) nature and materiality of testimony to be elicited from witnesses who must be transported; (5) respective courts' familiarity with applicable law and conditions of their dockets; and (6) residences of parties. *Centerville ALF, Inc. v. Balanced Care Corp.,* 197 F. Supp.2d 1039, 1049 (S.D. Ohio 2002).

Here, the above factors overwhelmingly support transfer.

**<u>Nature of the Suit</u>**

Plaintiff's First Amended Complaint alleges breach of contract claims, unjust enrichment and conversion. The suit however, is not limited to the mere purchase of goods and services which remain unpaid. Instead, Plaintiff's First Amended Complaint alleges Soprema agreed to sell materials to Defendants Bodell and/or Beachside under the terms of an agreement arising out

of a mediation that occurred in Hawaii and not per the written terms of the Authorized Roofing Agreements.  Furthermore, Plaintiff alleges it is owed money for supervision, testing and inspection costs from Sopremas efforts in Hawaii.  Finally, Plaintiff alleges A-1's work was defective and A-1 failed to repair the defective work.  Therefore, the allegations in the First Amended Complaint involve several claims arising from the actions of Plaintiff and Defendants wholly occurring in Hawaii.

**Place of Events**

Plaintiff's claims arise from events that occurred entirely in Hawaii.  The alleged defective workmanship of A-1, the alleged agreement to remediate the faulty work and the parties respective efforts to accomplish the remediation were negotiated and conducted in large part, if not entirely, in Hawaii.  Soprema alleges unpaid testing, supervision and inspection fees which occurred solely in Hawaii and Soprema and/or its agents routinely traveled to Hawaii to perform those services and agreed to mediate and participated in mediation in Hawaii.

**Relative Ease of Access of Proofs**

Because Plaintiff's First Amended Complaint alleges faulty workmanship by A-1 in failing to follow the repair protocol established at the Hawaii mediation and failed to properly install the roofing system on the Queens' MarketPlace project, it will be essential to the case to view the construction cite.  Experts must have access to view the roof, and, in addition to the experts, the witnesses to the work performed, the supervisors who supervised the installation and the contractors and subcontractors who worked on the project, will all be deposed.  The original design and construction plans, along with the architects testimony, will be evidence in this case.  Nearly all of the above are located in Hawaii.  Furthermore, Plaintiff routinely traveled to

Hawaii to supervise and inspect the project and agreed to mediate in Hawaii.  There is little, if any, evidence located in Northern Ohio relevant to the claims in Plaintiff's First Amended Complaint.  The central issue of this case is who is to blame for the leaking roofs at the Queens' MarketPlace site in Hawaii and the evidence on this issue is overwhelmingly located in Hawaii.

**Nature and Materiality of Testimony**

As stated above, the parties contend testimony on Soprema's instructions to the installers will be needed to determine responsibility for the failure of the Queens' MarketPlace roofs. Experts, representatives of non-party Queens' MarketPlace testimony, witnesses to Soprema's representations to Defendants' employees, testimony on how the roofing materials were stored, installed, the condition they were delivered, expert and non-expert testimony on the damage, amount and costs of repairs and the Hawaiian mediation will all be needed.  All militate heavily in favor of Hawaii.

**Residences of parties**

Only Plaintiff resides in Northern Ohio while two defendants reside in Hawaii, a third worked extensively in Hawaii and, as argued by Defendant Bodell, possible compulsory counterclaim party Queens' Market is a Hawaii company.

**Forum Selection clause**

Although A-1 and Beachside both signed forum selection clauses naming this Court as the proper venue for disputes arising from the Authorized Roofer Agreements, the Court finds it is not dispositive and a review of the factors to consider transfer overwhelmingly support transfer to Hawaii.  Not only has Plaintiff regularly traveled, supervised, tested and negotiated in Hawaii, it also retained counsel in Hawaii and agreed to mediate the dispute in Hawaii.  The

15

Court has considered Soprema's choice of forum, considering the distances involved, the number of witnesses, experts who are Hawaii residents who will need to testify, the site of the dispute is Hawaii and Soprema and/or its agents availed itself of the opportunity to mediate its disputes in Hawaii and retained counsel in Hawaii, and therefore, concludes that the aforementioned factors all militate heavily in favor of transfer.  Therefore, for the above reasons, the Court finds transfer pursuant to 28 U.S.C. §1404(a) is warranted and the Court orders the case transferred to the United States District Court of the District of Hawaii for further adjudication.

IT IS SO ORDERED.


  S/Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge


March 18, 2010